UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRANDON ALEXIS MARTINEZ-LOPEZ,

　　　　　　　　　　　　Petitioner,

　　　　　　　　-v-

IMMIGRATION JUDGE DARA REID *et al.*,

　　　　　　　　　　　　Respondents.

26 Civ. 2893 (PAE)

<u>OPINION & ORDER</u>

---

PAUL A. ENGELMAYER, District Judge:

On March 27, 2026, *pro se* petitioner Brandon Alexis Martinez-Lopez was detained by U.S. Immigration and Customs Enforcement ("ICE"). On April 8, 2026, he petitioned for a writ of habeas corpus. Dkt. 1 ("Petition"). That day, the Court ordered respondents (collectively, the "Government") to respond by April 13, 2026, including by stating whether the facts of this case are materially distinguishable from those in *Yao v. Almodovar*, 813 F. Supp. 3d 461 (S.D.N.Y. 2025). Dkt. 3 at 1. In *Yao*, this Court held that a noncitizen whom the Government had similarly detained after release in the United States was held under 8 U.S.C. § 1226(a), and ordered the noncitizen's release, based on a due process violation. 813 F. Supp. 3d at 475–78.

The Government opposed the petition. Dkt. 6 ("Opp'n"). It acknowledges that the legal framework governing Martinez-Lopez's case is materially indistinguishable from that in *Yao*, under which his detention is discretionary under § 1226(a), and not, as the Government argued in *Yao*, mandatory, under 8 U.S.C. § 1225(b)(2)(A). But it argues, the appropriate remedy here for the detention of Martinez-Lopez is not his immediate release, but the provision to him of a bond hearing before an immigration judge. That is because ICE re-detained Martinez-Lopez based on his recent arrest by local law enforcement on charges of harassment and criminal choking.

The Court agrees.  It finds, as in *Yao*, that Martinez-Lopez is detained under § 1226(a), not § 1225(b)(2)(A), and thus is entitled to a prompt bond hearing.  However, it holds, unlike in *Yao*, that ICE exercised its discretion when it detained him based on his recent arrest.  The Court thus denies Martinez-Lopez's request for immediate release, while ordering the Government, within one week, to provide Martinez-Lopez with a bond hearing before an immigration judge.

I.    **Background**[1]

    A.    **Martinez-Lopez's Arrival in the United States and Earlier Immigration Proceedings**

Martinez-Lopez is a citizen of Guatemala.  Dkt. 6-2 ("First I-213") at 1.  On June 26, 2014, at age 10, he and his mother crossed the U.S.–Mexico border on foot and were apprehended by the U.S. Border Patrol, which transferred them to ICE custody.  *Id.* at 2–3.  On June 27, 2014, ICE released Martinez-Lopez on an order of release on recognizance (Form I-220A).  Dkt. 6-1 ("Release Order") at 2.  The order listed a Bridgeport, Connecticut address as Martinez-Lopez's residence.  As a condition of release, it required him, *inter alia*, not to violate "any local, State, or Federal laws or ordinances."  *Id.*  ICE later placed him in removal proceedings.  Opp'n at 1.

On June 23, 2022, an immigration judge dismissed Martinez-Lopez's removal proceedings, without prejudice, based on his pending petition with the U.S. Citizenship and

---

[1] This account draws on the following materials: Martinez-Lopez's petition, Dkt. 1; June 27, 2014 release on recognizance and August 4, 2014 order of supervision, Dkt. 6-1; June 27, 2014 immigration record, Dkt. 6-2; June 23, 2022 order of Immigration Judge David Norkin, Dkt. 6-3; December 14, 2023 form I-797C (notice of action), Dkt. 6-4; criminal history, Dkt. 6-5; March 27, 2026 form I-213, Dkt. 6-6; March 27, 2026 arrest warrant, Dkt. 6-7; March 27, 2026 notice to appear, Dkt. 6-8; March 27, 2026 ICE risk assessment, Dkt. 6-9; April 1, 2026 termination notice, Dkt. 6-10; and April 7, 2026 order of Immigration Judge Dara Reid, Dkt. 6-11.

Immigration Services ("USCIS") for Special Immigrant Juvenile ("SIJ") classification. *See id.*[2] On December 14, 2023, USCIS granted Martinez-Lopez's petition for SIJ classification. *Id.*; Dkt. 6-4 ("First USCIS Notice") at 1. The notice stated that USCIS exercised its discretion to defer his removal from the United States for four years (*i.e.*, until December 14, 2027). First USCIS Notice at 1. Martinez-Lopez has a pending application for asylum and withholding of removal (I-589). Dkt. 6-6 ("Second I-213") at 2.[3]

### B. Martinez-Lopez's March 2026 Arrest, Criminal Proceedings, and ICE Detention

On March 21, 2026, Martinez-Lopez was arrested by local law enforcement in Spring Valley, New York. He was charged with (1) criminal obstruction of breathing or blood circulation, under N.Y. Penal Law § 121.11, a class A misdemeanor, and (2) harassment in the second degree, under N.Y. Penal Law § 240.26, a violation. Dkt. 6-5 ("Criminal History") at 2.[4] After his arrest, the Rockland County Jail contacted ICE and referred Martinez-Lopez to it. Opp'n at 1.

On March 27, 2026, ICE arrested Martinez-Lopez at the Rockland County Probation Department, pursuant to a form I-200 arrest warrant. *Id.* at 2–3; Dkt. 6-7 ("Arrest Warrant"). It served him with a notice to appear, charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) (noncitizen present without being admitted or paroled) and (a)(7)(A)(i)(1) (noncitizen present without valid entry documents). Opp'n at 2–3; Dkt. 6-8 ("NTA").

---

[2] This classification allows certain noncitizen children in the United States, who cannot be reunified with a parent due to abuse, neglect, or abandonment, to obtain lawful permanent residence here. *See* Immigration and Nationality Act ("INA") § 101(a)(27)(J).

[3] The record does not reflect other details concerning the application, save that, as of March 27, 2026, it remained pending. Second I-213 at 2.

[4] The record does not reflect other details concerning Martinez-Lopez's alleged offense conduct.

ICE later transported Martinez-Lopez to its Hudson Valley office for processing, Opp'n at 2–3, where it conducted a "Risk Classification Assessment," dated March 27, 2026, Dkt. 6-9 ("Risk Assessment"). The risk assessment stated that he poses a "medium" risk to public safety. *Id.* at 1. It stated that Martinez-Lopez does not have a relevant criminal history besides the pending charges from March 27, 2026. *Id.*; *see also* Criminal History (same). But, it stated, on the basis of these charges, Martinez-Lopez presents an "[i]ncreased risk to public safety – High Severity." Risk Assessment at 1. The risk assessment further stated that Martinez-Lopez poses a "high" risk of flight. *Id.* at 2. Relevant to this factor, it stated: that his "immigration violation history" reflects that he illegally entered the United States; that he is "not a current drug user"; that he does not possess a valid Guatemalan travel document; that he does not have invalid identification documents from any countries; and that he is not subject to a final order of removal. *Id.* Viewing these factors in combination, the assessment recommended that ICE detain Martinez-Lopez. *See id.* at 1.[5]

Martinez-Lopez was later transported to Orange County Jail in Goshen, New York, where he remains detained. Opp'n at 2. On April 1, 2026, USCIS terminated his period of deferred removal, although it noted that his SIJ classification "remain[ed] approved." Dkt. 6-10 ("Second USCIS Notice"). On April 7, 2026, an immigration judge denied bond, finding that she lacked jurisdiction pursuant to *Matter of Yajure Hurtado*, 29 I & N Dec. 216 (BIA 2025). Dkt. 6-11 ("Bond Order") at 1.

---

[5] The assessment, under a section titled "Mandatory Detention per Statues and Allegations as of 03/27/2026 1418," separately stated that Martinez-Lopez is "[n]ot subject to mandatory detention per statutes and allegations." Risk Assessment at 1.

### C.     This Litigation

On April 8, 2026, Martinez-Lopez filed this petition.  Dkt. 1.  That day, the Court set a briefing schedule.  Dkt. 3.  On April 13, 2026, the Government opposed, attaching supporting documents.  Dkts. 6, 6-1–6-11 (described in note 1, *supra*).  Martinez-Lopez has not filed a reply.

## II.     Applicable Legal Standard

Section 2241 of Title 28 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  Federal courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the constitutionality of their detention.  *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

## III.     Discussion

### A.     The Statutory Basis for Martinez-Lopez's Detention

Based on the petition and the Government's opposition and supporting documents, the facts of this case that bear on the statutory basis for Martinez-Lopez's detention are materially indistinguishable from those in *Yao*.  In each case, the petitioner unlawfully entered the United States, was immediately taken into custody, and was released on his own recognizance under § 1226.  *See* First I-213 at 2–3; Release Order at 2; *Yao*, 813 F. Supp. 3d at 465.  Each petitioner had removal proceedings commenced against him and filed an asylum application, which remained pending as of the time of the petition.  *See* Second I-213 at 2; *Yao*, 813 F. Supp. 3d at 466.  Each petitioner had recently been taken into custody and served with an arrest warrant citing INA § 236—*i.e.*, 8 U.S.C. § 1226—as the statutory basis for detention.  Arrest Warrant

5

at 1; *Yao*, 813 F. Supp. 3d at 466. On this basis, it is clear that Martinez-Lopez, like Yao, is detained under § 1226(a), under which detention is discretionary—not § 1225(b)(2)(A), which mandates it. *See Yao*, 813 F. Supp. 3d at 475. The Government concedes that *Yao* is controlling on this point. And ICE's risk assessment of Martinez-Lopez expressly states that he is "[n]ot subject to mandatory detention per statutes and allegations." Risk Assessment at 1.

The Court accordingly holds that Martinez-Lopez is detained under § 1226(a).

**B.    Remedy**

Martinez-Lopez's petition sought either his "release . . . on [his] own recognizance" or "an immediate bond hearing." Petition at 7. The Government argues that, if Martinez-Lopez is found to have been detained under § 1226(a), the appropriate remedy is not his outright release— the remedy the Court found appropriate in *Yao*—but a prompt bond hearing before an immigration judge. Opp'n at 2. Martinez-Lopez has not replied to the Government's submission.

The Government is correct. Yao was detained under far different circumstances. Yao had complied with all conditions of release, including abiding by all laws, and was undisputedly neither a flight risk nor a danger to the community. *Yao*, 813 F. Supp. 3d 475–76. As ICE conceded, it had not "exercised any discretion *at all*" in detaining Yao. *Id.* (emphasis in original). As a result, Yao's detention was unlawful, and the appropriate remedy for that detention was his release, not the provision of a bond hearing. *Id.* at 477.

In contrast, ICE's detention of Martinez-Lopez based on his recent arrest for a violent crime reflected a paradigmatic exercise of discretion. On March 21, 2026, as noted, the Spring Valley Village (N.Y.) Police Department charged him with criminal obstruction of breathing or blood circulation, and harassment, both violations of New York Penal Law. Criminal History

at 2.  The conditions of release to which Martinez-Lopez was subject by ICE required him not to violate any laws.  Release Order at 1.  Six days later, ICE, on a referral by the Rockland County Jail, arrested Martinez-Lopez, on the grounds that the pending criminal charges bespoke alleged violations of that condition.  Opp'n at 1; Second I-213 at 3; Risk Assessment at 1.  That day, as noted, ICE assessed that he posed a "medium" public safety risk and a "high" flight risk.  Risk Assessment at 1–2.

The facts here thus reflect that ICE—notwithstanding its incorrect litigation position that his and Yao's detentions were mandatory under § 1225(b)(2)(A)—in fact exercised its discretion to detain Martinez-Lopez, based on the individualized circumstances presented by his arrest. Martinez-Lopez has not established that the decision to detain him was in any respect deficient under § 1226.

Martinez-Lopez is, however, entitled under § 1226 to a prompt bond hearing consistent with due process "at which the Government [is to] bear[] the burden of proving, by clear and convincing evidence, that [he] is a danger to the community or a flight risk."  *Guedez v. Catletti*, No. 26 Civ. 2463, 2026 WL 962575, at *2 (S.D.N.Y. Apr. 9, 2026).  Federal regulations provide that noncitizens "detained under § 1226(a) receive bond hearings *at the outset of detention*." *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018) (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)) (emphasis added); *see also Johnson v. Arteaga-Martinez*, 596 U.S. 573, 579 (2022) (same). Here, it is undisputed that ICE has failed to provide such a hearing since it took Martinez-Lopez into custody on March 27, 2026.  On April 7, 2026, an immigration judge denied him bond, not on the merits, but on the incorrect premise, urged by ICE, that Martinez-Lopez had been taken into custody under § 1225(b)(2)(A), not § 1226, and thus was subject to mandatory detention. *See* Bond Order at 1 (citing *Yajure Hurtado*, 29 I. & N. Dec. at 220).  But that premise, as

7

explained above and in *Yao*, was wrong, as was the administrative precedent on which the IJ relied. *See Villegas ex rel. Guzman Andujar v. Francis*, No. 25 Civ. 9199, 2025 WL 3215597, at *4 (S.D.N.Y. Nov. 18, 2025) (collecting cases disagreeing with *Yajure Hurtado*, as "contrary to the [INA's] statutory scheme, Supreme Court jurisprudence, and decades of [Department of Homeland Security] practice"). At that hearing, ICE will be at liberty to establish—and Martinez-Lopez will be at liberty to oppose—that he presents a danger to the community and/or a risk of flight. *See, e.g.*, *Sharifzoda v. Orange Cnty. Jail*, No. 26 Civ. 2486, 2026 WL 851378, at *1–3 (S.D.N.Y. Mar. 27, 2026) (finding petitioner detained under § 1226 and ordering bond hearing, where ICE exercised discretion to detain petitioner based on arrest for domestic violence); *Guachambala v. Lyons*, No. 26 Civ. 1835, 2026 WL 686154, at *2–3 (S.D.N.Y. Mar. 10, 2026) (same where ICE detained petitioner based on pending drunk driving charges); *Gunduzalp v. Joyce*, No. 26 Civ. 2330, 2026 WL 948736, at *3–4 (S.D.N.Y. Apr. 8, 2026) (same where ICE detained petitioner based on receiving tip that he posed public safety risk).

## CONCLUSION

For the above reasons, the Court grants Martinez-Lopez's petition for a writ of habeas corpus, insofar as the petition seeks a bond hearing, but denies the petition, insofar as it seeks Martinez-Lopez's immediate release.

By May 4, 2026, an immigration judge shall hold a bond hearing for Martinez-Lopez, at which the Government shall bear the burden of proving, by clear and convincing evidence, that Martinez-Lopez is a danger to the community or a flight risk. In determining whether to grant bond, the immigration judge shall consider the sufficiency of alternatives to imprisonment, including but not limited to release on recognizance and electronic monitoring. In determining

the amount of any bond imposed, the immigration judge shall consider Martinez-Lopez's ability to pay.

Within 48 hours of the bond hearing, the Government shall file a letter on the docket of this case stating the outcome of the bond hearing. It shall also promptly order a transcript or recording of the hearing and file such on the docket.

The Clerk of Court is respectfully directed to mail a copy of this decision to Martinez-Lopez and interested party Alba Lopez at their respective addresses on file.


SO ORDERED.


Dated: April 27, 2026
      New York, New York

                                        _____
                                              PAUL A. ENGELMAYER
                                              United States District Judge

9